UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12197-GAO

GREY WILKERSON,
Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
April 3, 2012

O'Toole, D.J.

The plaintiff appeals the denial of his application for Social Security Disability Insurances Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.

The plaintiff filed his applications for DIB and SSI on April 24, 2008, claiming an inability to work. (Administrative Tr. at 14 (hereinafter R.).) These applications were denied. (Id. at 15.) On April 14, 2010, an Administrative Law Judge ("ALJ") heard the case and issued an opinion finding that the plaintiff was not disabled. (Id. at 14-23.) The Decision Review Board ("DRB") reviewed the plaintiff's claim and affirmed the ALJ's decision on October 29, 2010. (Id. at 1-3.) The plaintiff has exhausted his administrative remedies and his claims for DIB and SSI benefits are now ripe for review by this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.  Factual Background

### A.  Medical History

At his alleged onset date in 2008, the plaintiff was forty-four years old and had completed high school and two years of college. (Id. at 236.) He had recently worked as a customer

service/call center representative, a computer operator, and a temporary office worker. (Id. at 43, 47.)

The plaintiff has had type 2 diabetes mellitus since 1999. (Id. at 322.) In 2005, he suffered a heart attack and was subsequently diagnosed with coronary artery disease. (Id.) He also suffers from neuropathy in his hands and feet, chest pains, and back pain. (Id. at 413-14, 464, 467, 471, 480.)

In April 2008, the plaintiff visited his primary care physician, Dr. JoEllen Abraham, who told the plaintiff she would support him going on disability for two months. (Id. at 317.) On June 16, 2008, Dr. Abraham determined that the plaintiff did not have motor neuropathy and that if he did not control his diabetes, his coronary artery disease would worsen. (Id. at 387.)

The plaintiff was then examined by Dr. John Jao on behalf of the Agency in May 2008. (Id. at 378-85.) Dr. Jao assessed the plaintiff's residual functional capacity ("RFC") and concluded that the plaintiff could lift up to 20 pounds occasionally and up to 10 pounds frequently and that he could sit, stand, and walk for about 6 hours per 8-hour work day. (Id.)

In May 2008, the plaintiff saw Dr. Abraham for back pain he had been experiencing for two months. (Id. at 413-14.) She recommended he treat this pain with Tylenol. (Id.)

The plaintiff underwent a second RFC assessment by Dr. Theresa King on behalf of the Agency on November 13, 2008. (Id. at 443-440.) She also concluded that the plaintiff could lift up to 20 pounds occasionally and up to 10 pounds frequently and that he could sit, stand and/or walk for about 6 hours per 8-hour work day. (Id.) Dr. King additionally found that the plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. (Id.)

In January 2009, the plaintiff saw Dr. Abraham regarding continued back pain, which he rated at a nine out of ten. (Id. at 464.) He also complained of numbness and pain in his hands.

(Id.) At a follow up appointment in February, the plaintiff further complained of pain and tingling in his hands. (Id. at 467.) Dr. Abraham concluded this was unlikely to be peripheral neuropathy from his diabetes because he denied any numbness or tingling in his feet. (Id. at 469.)

At a follow up appointment about two weeks later, plaintiff complained of numbness in his feet as well. (Id. at 471.) He explained this happens in the evening when he is trying to sleep. (Id.) Dr. Abraham examined the plaintiff and found he had full range of motion and intact muscle strength. (Id. at 472.)

At an examination in June 2009, the plaintiff expressed frustration with Dr. Abraham about the denial of his application for SSI. (Id. at 479.) She explained that his conditions are not of themselves disabling conditions. (Id.) She also noted that his hand and foot pain was consistent with neuropathy, but his last EMG was not consistent with this diagnosis. (Id. at 480.)

Dr. Michael Tierney saw the plaintiff in July 2009. (Id. at 484.) In discussing the management of his conditions, Dr. Tierney suggested to the plaintiff that he return to gainful employment, so he can have a normalized routine and be able to afford the cost of his medications. (Id. at 497.)

In October 2009, the plaintiff was evaluated for polyneuropathy at a neuromuscular clinic. (Id. at 489.) Dr. Min Zhu examined the plaintiff and determined that his symptoms were consistent with diabetic neuropathy (Id. at 490.) Dr. Zhu did note, however, that there may be other explanations for these symptoms as it is "unusual for diabetic neuropathy to start in the fingers and toes at the same time." (Id. at 412.)

The plaintiff then saw Dr. Jonathan Berz for a physical exam in March 2010. (Id. at 495-498.) Dr. Berz completed a peripheral neuropathy form after the examination and concluded that the plaintiff suffered from moderate pain and paresthesias in his feet and hands. (Id. at 495.) Dr.

3

Berz estimated that the plaintiff could sit, stand and walk for about two hours each in an eight hour workday. (Id. at 496.) He also concluded that the plaintiff could lift up to ten pounds and occasionally bend, twist, crouch and squat. (Id. at 497.) He further determined that the plaintiff would miss more than four work days per month as a result of these impairments. (Id. at 498.) On March 16, 2010, Dr. Benz completed an EAEDC Medical Report on behalf of the plaintiff. (Id. at 514-24.) In this report, Dr. Benz concludes that the plaintiff does suffer from a "physical, mental health, or cognitive impairment affecting his ability to work." (Id. at 522.) Dr. Benz opines that this impairment is expected to last more than one year. (Id.) However, the form also asked Dr. Benz to check "yes" if any of a list of several activities of daily living would be impacted by "the patient's medical, mental health, and/or cognitive condition(s), and he left the list entirely unchecked. (Id. at 521.)

    B.    <u>Administrative Hearing and ALJ Decision</u>

An administrative hearing was held on April 14, 2010. At the hearing, the plaintiff testified that he lives alone in a first floor apartment and that he took public transportation to the hearing. (Id. at 40.) He detailed his past employment for the ALJ, noting that he was terminated from his last employment as a customer service representative on April 2, 2008. (Id. at 46-7.)

The ALJ questioned the plaintiff about his daily life and activities, and the plaintiff explained that he can get up, wash, dress and take care of basic personal maintenance. (Id. at 73.) He also explained that he prepares meals and can do housework such as laundry, dishes and cleaning on his own and occasionally with the help of his children. (Id. at 73-76.) He noted that he could no longer do things with his children such as swimming, playing basketball, and running around outside. (Id. at 88.) He also noted that he cannot use a computer for more than a short period of time because of the intense pain in his hands. (Id. at 81.)

As a result of the testimony given by the plaintiff as well as the VE, the ALJ determined the plaintiff had the RFC to perform some of his past relevant work and was therefore not disabled under sections 216(i) and 223(d) of the Social Security Act.

## II. Discussion

Judicial review of this administrative decision is authorized by 42 U.S.C. § 405(g). A district court reviewing a decision must determine whether the final decision is supported by substantial evidence and whether the correct legal standard has been applied. Seavey v. Barnhart, 276 F. 3d 1, 9 (1st Cir. 2001). Assessing credibility, drawing inferences, evaluating potentially conflicting medical evidence and the ultimate determining the issue of disability are all the responsibility of the ALJ, in the first instance, and ultimately the Commissioner. See Rodriguez v. Sec'y of Health & Human Servs., 819 F. 2d 218, 222 (1st Cir. 1981). The findings must be upheld by the court if, viewing the record as a whole, a reasonable mind would accept the record as adequate to support the decision. Id.

The plaintiff argues that the decision of the ALJ should be reversed on five grounds. First, he argues that the ALJ did not properly complete the sequential evaluations process required by the regulations. See 20 C.F.R. § 404.1520(a)(4). Second, the plaintiff says that the ALJ erred in determining that the plaintiff could perform his past relevant work. Third, he contends that the ALJ did not properly assess the plaintiff's credibility. Fourth, the plaintiff objects that the ALJ improperly relied on testimony from a vocation expert to conclude the plaintiff was not disabled. And finally, he complains that the ALJ ignored crucial medical evidence in making his decision and that the decision is not supported by substantial evidence.

A. The Five Step Evaluation Process

In evaluating a claim for benefits, the ALJ must employ a five-step process: (1) if the claimant is engaged in substantial gainful activity, the application for benefits is denied; (2) if the claimant has a severe impairment or a combination of impairments within the relevant time period, the evaluation continues; (3) if the impairment meets the conditions for a "listed" impairment in the Social Security regulations, then the application is granted; (4) if the claimant's has the residual functional capacity ("RFC") to perform past relevant work, then the application is denied; and (5) if the claimant is unable to do any other work, given the RFC, education, experience and age, the application is granted. Seavey, 276 F.3d at 5; see also 20 C.F.R. § 404.1520(a)(4).

The plaintiff argues that the ALJ failed to conduct a complete analysis of his impairments and the combination of his impairments at step two. The ALJ found that the medical record established that the plaintiff has "diabetes, high blood pressure and coronary artery disease." (R. at 17.) The ALJ also found that these impairments have "more than a minimal effect on the claimant's ability to perform basic work-related activities." (Id. at 16-17.) As a result of this analysis, the ALJ found that these impairments qualified as "severe" pursuant to 20 C.F.R. § 404.1520(a)(4)(ii). (Id.) Thus, the second step of the evaluation was completed in the plaintiff's favor. The plaintiff now suggests that the ALJ was required to assess the individual and combined impacts of each impairment on the plaintiff's abilities to work. This is not correct. The ALJ assessed all impairments, both sever and non-severe, in making the determination of whether the impairments have an impact on the claimant's ability to work. See 20 C.F.R. §§ 404.1520(e) and 404.1545(a)(1). The ALJ did not err at step two of the evaluation process of the plaintiff's impairments.

### B. Past Relevant Work

The plaintiff argues that the ALJ erred in concluding that he could perform past relevant work. The plaintiff asserts this conclusion is inconsistent with the ALJ's assessment of his RFC. The ALJ questioned the plaintiff about his past work and the specific demands of the various tasks he performed. Since he had held a variety of past jobs, the skills required varied with the particular job being considered. The ALJ questioned the VE about the nature of the plaintiff's prior customer service work, and the VE explained that the position would be classified as sedentary and semi-skilled in nature. The ALJ properly assessed the plaintiff's RFC to perform sedentary work as defined by 20 C.F.R. 404.1567(a). (R. at 17.) This was based both on the plaintiff's medical history and on his testimony that he lives independently and performs daily activities successfully. (Id. at 20.)

The determination that the plaintiff can perform past relevant work is supported by substantial evidence. Relying on the testimony of both the VE and the plaintiff, the ALJ found that the plaintiff has the education, skills and experience that can be transferred to a number of jobs in the national economy. (Id. at 22.) Further, the ALJ's reasoning that despite the limitations presented by his impairments, the plaintiff's ability to sedentary work, coupled with his age, education and transferable work skills support the finding that the plaintiff is not disabled. (Id. at 22.)

### C. Credibility Assessment

The plaintiff also argues that the ALJ erred in assessing the plaintiff's credibility and complaints of pain. In evaluating an applicant's claims of pain, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. 404.1529(a).

The ALJ must thoroughly question the applicant about his "daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain in conformity with the guidelines set out in Avery." Frustaglia v. Sec'y of Health and Human Servs., 829 F. 2d 192, 195 (1st Cir. 1987) (citing Avery v. Sec'y of Health and Human Servs., 797 F. 2d 19, 29 (1st Cir. 1986)). The ALJ is expected to weigh the objective evidence in the record and disregard subjective claims of pain if they are unsubstantiated or inconsistent with the reliable objective evidence. Dupuis v. Sec'y of Health and Human Servs., 869 F. 2d 622, 623 (1st Cir. 1989) (complaints of pain must be "consistent with medical findings.")

Despite the plaintiff's claims, the ALJ questioned the plaintiff extensively at the hearing about his neuropathy and the pain associated with it, as well as his other conditions. (R. at 55-102.) In addition to the plaintiff's testimony, the ALJ properly considered all the medical evidence and the plaintiff's day to day activities and limitations. Specifically, the ALJ examined the plaintiff extensively about his activities of daily living and found that these activities supported his finding of a capacity for sedentary work and the ultimate determination the plaintiff is not disabled. (Id. at 20.) The ALJ properly addressed all the Avery factors, weighed the objective medical evidence and considered how the plaintiff's testimony fit with the other evidence. See Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). Therefore, the ALJ properly assessed the plaintiff's pain and credibility and this assessment must be upheld.

### D. Vocational Expert Testimony

The plaintiff claims the ALJ's determination that he could perform past relevant work was inconsistent with the testimony of the VE. It is true that the VE opined that the plaintiff could not do some of the jobs that comprised his past relevant work, but it is also true that the

VE agreed that the plaintiff was not disabled from sedentary positions like his past position as a customer service representative. There was no error.

### E. The ALJ's Decision

Overall, the ALJ's decision is supported by substantial evidence. The plaintiff claims that the ALJ ignored "crucial medical evidence" in making his decision, yet fails to specify what that evidence might be. Both the testimony at the hearing and the objective medical evidence in the record provide substantial support for the ALJ's decision that the plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.

## III. Conclusion

For the foregoing reasons, the plaintiff's Motion (dkt. no. 11) to Reverse the Decision of the Commissioner is DENIED, and the defendant's Motion (dkt. no. 17) to Affirm the Commissioner's Decision is GRANTED. The Commissioner's decision is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge